36 F.3d 1102
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Rosenda Eufemia AGUILAR-ESCOBAR, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 93-70087.
 United States Court of Appeals, Ninth Circuit.
 Submitted June. 14, 1994.
Decided Sept. 2, 1994.*
 
 Before: GOODWIN, PREGERSON, and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Rosenda Eufemia Aguilar-Escobar, a native of El Salvador, petitions for review of the Board of Immigration Appeals' (Board) order affirming the Immigration Judge's (IJ) decision denying Ms. Aguilar-Escobar's applications for political asylum and for withholding of deportation. We have jurisdiction under Section 106(a) of the Immigration and Nationality Act, 8 U.S.C. Sec. 1105a(a). We vacate the Board's asylum determination and remand the case for further consideration.
 
 BACKGROUND
 
 3
 The petitioner came to the United States from El Salvador in September of 1989. She was served with an Order to Show Cause in June of 1990 and placed in deportation proceedings. She conceded deportability, and applied for asylum and withholding of deportation. The application was based on her belief that sympathizers of the FMLN would persecute her upon her return to El Salvador. During her employment, she received threats from members of the FMLN who, by menace and intimidation, sought to bring municipal transportation to a halt. Her husband was a member of the Salvadoran National Police, and his duties included investigating the activities of the FMLN. More than once, he was subjected to detention and abuse at the hands of the FMLN.
 
 
 4
 The IJ found that Ms. Aguilar-Escobar "has been threatened," and "had good reason to fear the guerrillas at the time she was still a dispatcher for the public transportation." Nevertheless, the IJ determined that no evidence showed that "either she or members of her family have been subjected to persecution or that she has a good reason to fear that she will be the victim of persecution, will be singled out for persecution or has a sufficient basis to believe that she possesses a belief or characteristic which a persecutor seeks to overcome by means of punishment of some sort." Consequently, the IJ denied her applications for asylum and withholding of deportation. The Board adopted the IJ's opinion in its entirety.
 
 DISCUSSION
 
 5
 We review legal questions regarding the requirements for establishing eligibility for asylum de novo. Hartooni v. INS, 21 F.3d 336, 340 (9th Cir.1994). Factual findings supporting the Board's asylum determination are reviewed under the "substantial evidence" standard. Id. Since the Board adopted the IJ's opinion in its entirety, it is to that opinion we turn. See Turcios v. INS, 821 F.2d 1396 (9th Cir.1987) (reviewing IJ's findings where the Board has adopted them as its own findings).
 
 
 6
 An alien who seeks judicial reversal of the Board's eligibility determination "must show that the evidence [she] presented was so compelling that no reasonable fact-finder could fail" to rule in her favor. INS v. Elias-Zacarias, 112 S.Ct. 812, 817 (1992). In Kotasz v. INS, --- F.3d ---, 1994 WL 393458 (9th Cir.), we wrote that "[t]his strict standard bars the reviewing court from independently weighing the evidence and holding that the petitioner is eligible for asylum, except in cases where compelling evidence is shown." We took care, however, to point out that a court is not precluded from vacating the Board's asylum determination, and remanding a case for further consideration, where the Board's denial of asylum was based upon an error of law. Because the decision of the IJ, as adopted by the Board, evinces the mistaken belief that threats cannot so oppress as to constitute "persecution" under Section 208 of the Refugee Act of 1980 (Act), 8 U.S.C. Secs. 1101(a)(42), 1158(a), we vacate and remand to allow the Board to exercise its judgment using the appropriate legal standard.
 
 
 7
 Section 208(a) of the Act gives the Attorney General discretion to grant asylum to an applicant who is unwilling to return to his native country because of past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. Sec. 1101(a)(42)(A).
 
 
 8
 Where an alien can show by a preponderance of the evidence that she was actually persecuted in the past, she "shall be presumed also to have a well-founded fear of persecution unless a preponderance of the evidence establishes that since the time the persecution occurred conditions in the applicant's country of nationality ... have changed" to such an extent that these fears no longer are justified. 8 C.F.R. Sec. 208.13(b)(1)(i) (emphasis added).[1] Once an alien proves that she was the subject of past persecution, then the government bears the burden of disproving that she has grounds for fearing future persecution.
 
 
 9
 On the other hand, where an alien cannot prove actual past persecution by a preponderance of the evidence, the burden does not shift to the government, and the alien must prove that she has a well-founded fear of future prosecution. 8 C.F.R. 208.13(b)(2).
 
 
 10
 The IJ was unconvinced that Ms. Aguilar-Escobar had carried her burden of demonstrating past persecution. The IJ therefore permitted the burden of demonstrating a well-founded fear of future persecution to remain with her. On this point the IJ's decision is not as clear as could be desired, and it appears that the IJ may have believed that threats on Ms. Aguilar-Escobar's life--which the IJ did find--could in no event constitute "past persecution." If this be the case (and, in the face of uncertainty, we assume it to be), the IJ was mistaken.
 
 
 11
 Not every threat or act of thuggery constitutes "persecution" within the meaning of the statute (although such conduct certainly may be relevant to determine whether an alien has a well-founded fear of future persecution). By their nature, threats are calculated to intimidate and cause dismay; but that alone cannot suffice to establish "persecution" and trigger the burden-shifting scheme under the statute. Yet in some circumstances threats may so oppress as to constitute "persecution." See, e.g., In re Acosta, 19 I & N Dec. 211, 222 (defining "persecution" to include "a threat to the life or freedom of, or the infliction of suffering or harm upon, those who differ in a way regarded as offensive") (citing Kovac v. INS, 407 F.2d 102, 107 (9th Cir.1969) (emphasis added). Common sense makes it plain that targeted threats of death or serious injury, evidencing a continuity of purpose, may amount to subjugation.
 
 
 12
 Perhaps the threats to Ms. Aguilar-Escobar, along with other acts of lawlessness such as the FMLN's attacks on her husband, rose to the level of "persecution" within the meaning of 8 U.S.C. Sec. 1101(a)(42). Or perhaps not. The determination requires a sensitivity to context and administrative expertise. We do not instruct the Board as to any required outcome on remand.
 
 
 13
 Because the Board may have erroneously assumed that threats cannot, in and of themselves, constitute past persecution, we vacate the decision of the Board and remand so that it may reevaluate Ms. Aguilar-Escobar's claims using the appropriate legal standard.
 
 
 14
 REMANDED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 If the INS shows that the alien's fears of future persecution are unfounded, the alien still can prevail if she demonstrates "compelling reasons" for being unwilling to return to her home country. 8 C.F.R. Sec. 208.13(b)(1)